# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| AARON MOSTOW, by and through his Guardian and Next Friend, SONIA MOSTOW, <br><br> Plaintiff, <br><br> v. <br><br> HINSDALE TOWNSHIP HIGH SCHOOL DISTRICT 86, et al., <br><br> Defendants. | Case No. 06 C 4505 <br><br> Judge Joan B. Gottschall <br> (Emergency Judge) |

## MEMORANDUM OPINION AND ORDER

Aaron Mostow ("Mostow")[1] brought suit in this court seeking a temporary restraining order ("TRO") and a preliminary injunction against Hinsdale Township High School District 86 ("the district") and the Illinois State Board of Education ("ISBE"). Mostow seeks preliminary injunctive relief to continue funding of his residential placement at the Heartspring School ("Heartspring") in Wichita, Kansas until a due process hearing officer can decide his claim for compensatory education. The court held a hearing to determine whether Mostow is entitled to a TRO. For the reasons discussed below, Mostow's motion for a TRO is granted against the district only.

I.  **Background**

Mostow is twenty-one years old and has been diagnosed with autism. He is nonverbal and is significantly developmentally disabled. Prior to September 2003, he received his

---

[1] The suit is brought by Sonia Mostow, Mostow's mother and guardian. For the purpose of this order, the court refers to Aaron Mostow as "Mostow" and his mother as "Sonia Mostow."

1

education at the Kennedy School and resided with his family. In September 2003 (when he was eighteen and a half years old), Mostow was placed at Heartspring where he both resided and received education.

On May 31, 2006, Sonia Mostow filed a due process complaint on behalf of her son, asserting that Mostow is entitled to compensatory education beyond his twenty-first birthday. Sonia Mostow also requested that the hearing officer order that Mostow remain at the Heartspring School under the "stay-put" provision of the Individuals with Educational Disabilities Improvement Act of 2004 ("IDEA").[2] On August 17, 2006, the hearing officer denied Sonia Mostow's request for a stay-put order, holding that the stay-put provision is not available to Mostow because he is over age twenty-one. The hearing officer held that the district has no financial responsibility to pay for Mostow's placement at Heartspring after August 21, 2006.

Because the district's contract with Heartspring for Mostow's placement expires on August 29, 2006, the district agrees it has the responsibility to fund Mostow's placement through that date. Under that contract, Heartspring will arrange for Mostow's return home at the district's expense, and if no funding is provided for Mostow's placement prior to the expiration of the contract, he will be returned home by August 31, 2006.

---

[2]This provision states, in relevant part, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child, or, if applying for initial admission to a public school, shall, with the consent of the parents, be placed in the public school program until all such proceedings have been completed." 20 U.S.C. § 1415(j).

2

## II. Discussion

As an initial matter, the court agrees with the due process hearing officer's ruling that the stay-put provision of the IDEA does not apply to this case. *See Board of Education of Oak Park & River Forest High School Dist. 200 v. Illinois State Board of Education*, 79 F.3d 654, 660 (7th Cir. 1996). Mostow, however, is not seeking an injunction under the stay-put provision, nor is he seeking relief under specific provisions of the IDEA. Instead, he seeks temporary injunctive relief to preserve the status quo while he administratively pursues his claim for compensatory education. The Seventh Circuit has indicated that such relief can be obtained using the normal test for a preliminary injunction, just not automatically under the stay-put provision. *Id.*

Thus, the court will examine whether Mostow has made a sufficient showing to receive a TRO under the traditional standard for that relief in this circuit. "To prevail on a motion for a preliminary injunction, [plaintiff] must show that (1) its case has a likelihood of success on the merits; (2) no adequate remedy at law exists; and (3) it will suffer irreparable harm if the injunction is not granted. If these three conditions are met, the court must balance the harm to [plaintiff] if the injunction is not issued against the harm to [defendant] if it is issued." *FoodComm Int'l v. Barry*, 328 F.3d 300, 303 (7th Cir. 2003) (citations omitted). Courts apply the same standard to a motion for a TRO. *See, e.g., Harder v. Village of Forest Park*, No. 05 C 5800, 2005 WL 3078096, at *2 (N.D. Ill. Nov. 14, 2005).[3]

---

[3] In response to the complaint and the request for a TRO, the district filed two motions to dismiss: one for failure to state a claim under Rule 12(b)(6) and the other for failure to join a necessary party under Rule 12(b)(7). For present purposes, the court considers these motions to dismiss as the district's opposition to the motion for a TRO.

3

A.  Likelihood of Success of the Merits

Because Mostow is seeking compensatory education in the proceedings before the due process hearing officer, the court considers his likelihood of success on that claim. The Seventh Circuit has recognized the availability of a claim for compensatory education; such a claim is an equitable claim for an award of a period of education beyond the individual's twenty-first birthday as a remedy for past violations of the IDEA. *Brown v. Bartholomew Consolidated School Corp.*, 442 F.3d 588, 598 (7th Cir. 2006); *Board of Education of Oak Park & River Forest High School Dist. 200*, 79 F.3d at 656. An award of compensatory education is meant "to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a [free and appropriate public education ("FAPE")] to a student." *G. ex rel. RG v. Fort Bragg Dependent Schools*, 343 F.3d 295, 309 (4th Cir. 2003).

Mostow argues that he was not receiving a FAPE during his placement at the Kennedy School at least during 2002-2003. Specifically, Sonia Mostow testified at the TRO hearing that she spoke with Gail Brankin ("Brankin")[4] in January of 2002 when Mostow was sixteen years old. During that conversation, Sonia Mostow testified that she expressed concern to Brankin about Mostow's current placement and asked whether other placements were available, such as a residential placement or another school called The Bridge. According to Sonia Mostow, Brankin informed her that she would inquire about The Bridge but that a residential placement was not available for Mostow because of his age. Instead, Brankin suggested that Sonia Mostow contact PACT, an Illinois state agency, about an adult residential placement for Mostow. Sonia Mostow

---

[4]Brankin is the district representative who has been involved in Mostow's placements and individualized education plans ("IEPs") since Mostow reached high school age (age fifteen).

4

testified that during the June 2002 IEP meeting, she again asked about a residential placement for Mostow and was again told that a residential placement was not an option. She testified that it was not until May 2003 that Branken agreed to find a residential placement for Mostow. Mostow was placed at Heartspring in September 2003 when he was eighteen and a half years old.

Of course, the district disputed these facts at the TRO hearing. Branken testified that Sonia Mostow never asked about a residential placement for Mostow until the May 2003 meeting at which time the district found such a placement for him.

At this preliminary stage, the court is not in a position to decide whether Mostow was deprived of a FAPE during the 2002-2003 time period while he was placed at the Kennedy School. But the court finds that Mostow has established a likelihood of success on the merits based on Sonia Mostow's testimony that the Kennedy School was not an adequate placement for Mostow and that her requests for a more appropriate residential placement for him were met with resistance and incorrect information.

The district argues that Mostow has not made a sufficient showing of a likelihood of success on the merits because his claim for compensatory education is barred by the statute of limitations. At least at this preliminary stage, the court disagrees and finds that the statute of limitations does not undermine Mostow's likelihood of success.

20 U.S.C. § 1415(f)(3)(C) states:

> A parent or agency shall request an impartial due process hearing within 2 years of the date the parent or agency knew or should have known about the alleged action that forms the basis of the complaint, or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.

There are statutory exceptions to the two year statute of limitations under 20 U.S.C.

§ 1415(f)(3)(D):

> The timeline described in subparagraph (C) shall not apply to a parent if the parent was prevented from requesting the hearing due to—
> (i) specific misrepresentations by the local educational agency that it had resolved the problem forming the basis of the complaint; or
> (ii) the local educational agency's withholding of information from the parent that was required under this subchapter to be provided to the parent.

Mostow's claim for compensatory education arises from alleged conduct by the district that occurred in 2002 and 2003. Because Mostow did not initiate a due process hearing until 2006, the two-year statute of limitations had run. Nevertheless, Mostow argues that both exceptions under 20 U.S.C. § 1415(f)(3)(D) apply and render his compensatory education claim timely.

Particularly, Mostow argues that the first exception applies because the district informed Sonia Mostow that Mostow would have adequate time at Heartspring after his placement there to prepare for transition to a Community Integrated Living Arrangement ("CILA"). According to Mostow, this representation indicated that the district "had resolved the problem underlying the complaint." It was not until a conversation with Mostow's teacher in May 2006, that Sonia Mostow realized that Mostow would be unable to make the transition because of the limited time remaining at Heartspring.

Mostow also argues that the second exception applies. Sonia Mostow testified that during various conversations with Brankin in 2002, she requested a residential placement for Mostow, but Brankin informed her that such a placement was not an option. She testified that Brankin told her to contact PACT about an adult placement. Thus, Mostow argues that the district withheld information from her that a residential placement was an option for Mostow and

6

that the district would be the responsible party to fund such a placement.

The court notes that neither party has cited any case applying these provisions, and with good reason: they did not become effective until July 1, 2005. Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, § 302, 118 Stat. 2646, 2803 (2004). The court has also been unable to locate any cases applying the exceptions.[5]

Based on the language of the exceptions contained in 20 U.S.C. § 1415(f)(3)(D) and Sonia Mostow's testimony discussed above, the court finds that Mostow's claim are not clearly barred by the statute of limitations. Again, Sonia Mostow's testimony is the subject of a factual dispute; Brankin testified to the contrary. However, Mostow has made a sufficient showing of a likelihood of success on the merits to warrant the issuance of a TRO.

B. No Adequate Remedy at Law and Irreparable Harm

The court finds that Mostow has shown that he has no adequate remedy at law and that he will suffer irreparable harm if the TRO is not granted. Mostow receives approximately $500 per month in social security and disability benefits. His placement at Heartspring costs about

---

[5]Both parties have assumed that this statutory limitations period applies even though Mostow's claims accrued prior to the effective date of the statute. The court need not decide whether the parties are correct because application of the limitations period in effect prior to the effective date of the statute would lead this court to the same result.

Prior to the recently enacted statute of limitations, the federal courts borrowed the most closely analogous state statute of limitations and applied it to the IDEA claim. At least one court in this district applied a two-year statute of limitations to a claim for compensatory education by borrowing the Illinois general personal injury statute of limitations. *Oak Park and River Forest High School Dist. No. 200 v. Illinois State Board of Education*, 886 F. Supp. 1417, 1423 (N.D. Ill. 1995), *reversed on other grounds by Board of Education of Oak Park & River Forest High School Dist. 200 v. Illinois State Board of Education*, 79 F.3d 654 (7th Cir. 1996). The district court in that case found the claim for compensatory education to be timely because the district's remarks discouraging the parents from bringing suit operated to toll the statute of limitations. *Id.* at 1424.

$16,000 per month. Sonia Mostow testified that if Mostow's placement at Heartspring is not funded, she would have to pursue a significantly less desirable placement for him such as an institution where he would be sedated. Mostow would be unable to reside in his parents' home because his father is advanced in years, has cancer, and has an infection from a brown recluse spider bite and because he acts aggressively toward others in the household, including his father.

Mostow presented affidavits from persons at Heartspring that he is making progress and that an additional year there will allow Mostow to achieve his goals of making the transition to a CILA or other independent living situation. Wayne Piersel, Mostow's treating psychologist, averred that if Mostow leaves the program next week, he would be able to live only in a large institution with his behaviors controlled by sedation.

Finally, Heartspring is a small facility which houses only forty-eight students. If Mostow leaves Heartspring because of lack of funding, his ability to return if the hearing officer orders compensatory education is less than certain. Even if he were able to do so, Sonia Mostow testified that during home visits, Mostow loses skills that he has developed at Heartspring. Thus, it appears that displacing Mostow from Heartspring could impede his progress and lengthen the time necessary for Mostow to prepare to transition to a CILA. Mostow has shown that he will suffer substantial irreparable harm if the TRO is not issued and that he would have no adequate remedy at law for his injury.

C. Balance of Hardships

The court finds that the balance of hardships weighs strongly in favor of Mostow. The injury to Mostow if the TRO is not issued is discussed above, and the court has found such harm to be substantial. In contrast, the harm to the district if the TRO issues is purely monetary. If the

8

court issues the TRO for an initial ten day period, the district will be required to expend approximately $6,000, and the district's financial interest would be protected by the bond required under Federal Rule of Civil Procedure 65(c) in the event the court later determines that the TRO was improperly granted.

The district argues that the balance of hardships weighs in its favor. It argues that even if Mostow prevails on his compensatory education claim at the administrative due process hearing, an award of compensatory education could be granted only prospectively, not retroactively. According to the district, it could not be required to pay for Mostow's education for the period between August 29 (the expiration of its contract with Heartspring) and an order of compensatory education by the due process hearing officer. In support of this argument, the district cites *Board of Education of Oak Park & River Forest High School Dist. 200*, 79 F.3d at 660. But that case does not appear to support the district's argument, particularly since the Seventh Circuit spoke approvingly of a grant of preliminary injunctive relief (as opposed to an automatic stay-put) in that decision.

Other cases, however, state that compensatory education is a prospective remedy. "Compensatory education involves discretionary, *prospective*, injunctive relief crafted by a court to remedy what might be termed an educational deficit created by an educational agency's failure over a given period of time to provide a FAPE to a student." *G. ex rel. R.G.*, 343 F.3d at 309 (emphasis added). Because such an award is prospective, unlike damages, it is not barred by the state's sovereign immunity under the Eleventh Amendment. *See, e.g., Timms on Behalf of Timms v. Metropolitan School District of Wabash County, Ind.*, 722 F.2d 1310, 1315 (7th Cir. 1983).

9

Nevertheless, it appears that these courts' characterization of compensatory education as a prospective remedy does not prevent this court from granting temporary injunctive relief. The fact that Mostow could not obtain a damages award for the alleged past violations of the IDEA does not mean that he cannot receive a TRO. A TRO entered prior to the hearing officer's determination of the merits of Mostow's compensatory education claim is still prospective relief, that of future education for past violations of the IDEA. The district has cited no case that would support its assertion that preliminary injunctive relief is inappropriate when the plaintiff seeks compensatory education and is past the age of twenty-one. Given that the Seventh Circuit expressly contemplated the availability of such relief in *Board of Education of Oak Park & River Forest High School Dist. 200*, 79 F.3d at 660, the court rejects the district's argument that Mostow would not be entitled to an award of compensatory education that would cover the period between the end of the district's contract with Heartspring and the ruling by the due process hearing officer.

Additionally, the court notes that the grant of a TRO favors the public interest. While Mostow's continued placement at Heartspring will result in the expenditure of public funds, it is likely that if his placement ceases, he will be placed in a state-funded living situation that would also require the expenditure of public funds. Put another way, if Mostow leaves Heartspring and is placed in an public institution, public funds will still be expended; such funds will just come from a different public pocket. Further, the public will benefit from Mostow's continued placement at Heartspring if additional time there allows him to transitions to a CILA. His ability to do so will mean that the public has received the maximum benefit for the substantial public funds which have been expended to-date over his almost three years at Heartspring. The court

10

finds that the balance of harms and the public interest warrant the grant of a TRO.[6]

D.   ISBE as a Party to a TRO

ISBE argues that the court should not enter a temporary injunction against it. Specifically, ISBE argues that its obligation to reimburse the district for Mostow's placement is governed by the Illinois School Code. Brankin testified that the district's current practice is to seek reimbursement from ISBE for a portion of the funds that the district expends to pay for Mostow's placement. Another court in this district considered whether a school district or ISBE was responsible for the costs of a student's placement during the pendency of a stay-put order, and held that the school district was responsible for the cost "without prejudice to its right to later seek reimbursement from the ISBE." *Board of Education of Oak Park & River Forest High School District No. 200 v. Illinois State Board of Education*, 10 F. Supp. 2d 971, 980 (N.D. Ill. 1998). The court finds that the same order is appropriate here. The TRO shall be entered against the district only without prejudice to any right the district has to seek reimbursement from ISBE.

---

[6]The district also filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(7), arguing that the Heartspring School is a necessary party whom Mostow has failed to join. The district argues that without Heartspring as a party, the court cannot order Mostow's continued placement there. But Mostow has not requested that the court order Heartspring to continue his placement, and no one has indicated that it will expel him if it continues to receive funding for his placement. The court finds that Heartspring is not a necessary party to the TRO.

11

## III. Conclusion

For the foregoing reasons, Mostow's motion for a TRO is granted.

ENTER:

Joan B. Gottschall
United States District Judge

Dated: August 25, 2006